1           **UNITED STATES DISTRICT COURT**
            **WESTERN DISTRICT OF NEW YORK**
2


3  _____
   UNITED STATES OF AMERICA,
4                                      Case No. 1:17-cr-40
                  Plaintiff,                  1:18-cr-105
5                                                  (LJV)
   vs.
6                                      February 8, 2019

   LAWRENCE RUSSELL, a/k/a MUCHO,
7
                  Defendant.
8  _____


9
                  **TRANSCRIPT OF SENTENCING**
10      **BEFORE THE HONORABLE LAWRENCE J. VILARDO**
              **UNITED STATES DISTRICT JUDGE**
11

12 APPEARANCES:           JAMES P. KENNEDY, JR.
                          UNITED STATES ATTORNEY
13                        BY: TIMOTHY C. LYNCH, ESQ.
                          Assistant United States Attorney
14                        Federal Centre
                          138 Delaware Avenue
15                        Buffalo, New York 14202
                          For the Plaintiff
16
                          LAW OFFICES OF MARK A. FOTI
17                        BY: MARK A. FOTI, ESQ.
                          16 West Main Street
18                        Suite 236
                          Rochester, New York 14614
19                        For the Defendant

20 PROBATION:             NATALIE B. HARRINGTON, USPO

21 DEPUTY CLERK:          ALLISON P. GIOIA, ESQ.

22 COURT REPORTER:        ANN M. SAWYER, FCRR, RPR, CRR,
                          NYRCR, NYACR, Notary Public
23                        Robert H. Jackson Courthouse
                          2 Niagara Square
24                        Buffalo, New York 14202
                          Ann_Sawyer@nywd.uscourts.gov

25

1              (Proceedings commenced at 2:00 p.m.)

2              THE CLERK:  All rise.  United States District Court

3    for the Western District of New York is now in session, the

4    Honorable Lawrence J. Vilardo presiding.

5              THE COURT:  Please be seated.

6              THE CLERK:  17-cr-40 and 18-cr-105, United States of

7    America versus Lawrence Russell.

8              Assistant United States Attorney Timothy C. Lynch

9    appearing on behalf of the government.

10             Attorney Mark A. Foti appearing with defendant.  The

11   defendant is present.

12             Also present, United States Probation Officer Natalie

13   Harrington.

14             This is the date set for sentencing.

15             THE COURT:  Good afternoon, everyone.

16             MR. LYNCH:  Good afternoon, Judge.

17             MR. FOTI:  Good afternoon.

18             THE COURT:  Before we proceed to sentencing, I want

19   to address a significant issue that I think has sort of

20   slipped by everyone here, and it's related to the defendant's

21   objection under Sentencing Guidelines Section 3C1.3, and

22   that's to the applicability of both Sections 3146 and 3147 to

23   the -- the crime of not appearing when the defendant was

24   required to appear.

25             And the reason that I say that there's an issue that

1    no one seems to have addressed, it's that 3147 provides for an

2    additional penalty that was not contemplated in the plea

3    agreement and that the defendant was not told about when he

4    conducted his plea colloquy.

5              So the maximum penalty, as I understand it, for the

6    crime -- for the drug crime was 40 -- 40 years; is that right?

7              MR. LYNCH:  That's correct, Judge.

8              THE COURT:  Okay.  And then an additional ten years

9    under 3146, but then an additional ten years to that if 3147

10   applies.  And the defendant was not told about that.

11             So before we get to the sentencing and before we even

12   go through with this, I think we need to -- I need to decide

13   whether 3147 applies and, therefore, whether the 3C1.3

14   objection is well taken.

15             Do you understand what I'm saying, folks?

16             MR. LYNCH:  Yes, Judge.

17             MR. FOTI:  Yes.

18             THE COURT:  And do you agree that that's an issue?

19             MR. LYNCH:  If I can just have a moment, Judge --

20             THE COURT:  Yeah.

21             MR. LYNCH:  -- to look --

22             THE COURT:  Yeah, go ahead.

23             MR. LYNCH:  -- at the indictment.

24             THE COURT:  Yeah, go ahead.

25             MR. LYNCH:  Yeah, Judge, I mean --

```
 1              THE COURT:  I'm setting up --

 2              MR. LYNCH:  -- I agree.

 3              THE COURT:  -- I'm --

 4              MR. LYNCH:  Yeah.

 5              THE COURT:  -- setting up a straw man, Mr. Lynch,

 6    because I'm not going to apply 3147.

 7              MR. LYNCH:  Yeah, and --

 8              THE COURT:  And I'm going to explain why I'm --

 9              MR. LYNCH:  Okay.

10              THE COURT:  -- not going to apply 3147.

11              MR. LYNCH:  Go ahead.

12              THE COURT:  So let me say I've read the papers on

13    that, Mr. Lynch.  I understand the government's position is

14    that 3C1.3 shouldn't apply simply because of Lawlor.

15              MR. LYNCH:  Correct.

16              THE COURT:  The defendant has made a more reasoned

17    argument about it.

18              The probation office has followed the eight circuit

19    courts that have decided this issue, and I'm going to disagree

20    with those eight circuit courts, as much as I hate to do that.

21    But I think there's good reason to do that here, and I want to

22    explain why.

23              And I think that this is an issue that ought to get

24    teed up for an appeal.

25              This case, obviously, is not the case on which to
```

1    appeal it since both sides -- the government because of

2    Lawlor, the defendant because he thinks he has a good

3    argument -- have asked for the same thing.  So neither side is

4    going to appeal this.  But it's an issue that ought to --

5    ought to be raised.

6            First of all, I think that the dissents, I recognize

7    that the 1st, the 3rd, the 4th, the 5th, the 6th, the 7th, the

8    9th, and the 11th Circuits have all said that 3147 applies in

9    a 3146 situation.  And I read the decisions in those cases,

10   and I understand where the majority is coming from in the

11   cases that had a majority, where the unanimous Court is coming

12   from in the cases that have a unanimous Court.

13           I disagree, however.  I think that Judge Nelson in

14   the Benson case and especially Judge King in the 4th Circuit

15   in the Fitzgerald case -- and I think it's the 4th Circuit,

16   yeah -- have the better of that argument.

17           And I think there's something that neither of those

18   Courts addressed.  And that -- and that, for me, tips the

19   balance.  And that is that Section 3146 provides for a

20   graduated sentencing scheme for defendants who don't show up

21   for proceedings.

22           So if you fail to appear for an offense that's

23   punishable for up to 15 -- or, for 15 years or more, you can

24   get up to ten years.

25           If you fail to appear for a crime that -- that you

USA v Lawrence Russell - Sentencing - 2/8/19

6

1    can get five years or more for, you get five years.

2           If you fail to appear for any other felony, you get

3    two years.

4           If 3147 applies as well, the most serious offense, 15

5    years, the -- the -- the penalty would double.  The less

6    serious offense, the middle one, it would triple.  The least

7    serious offense, it would go up by five times, six times, from

8    two to 12.

9           I can't believe that that's what Congress intended in

10   light of the fact that they had the graduated sentencing

11   scheme in 3146.

12          So -- and 3146 and 3147 I understand were passed at

13   the same time.  So I have to believe that 3147 was meant for

14   other criminal conduct than the failure to appear.

15          And for that reason, and also because both sides are

16   asking me not to apply the sentencing guideline enhancement in

17   3C1.3, I am going to find that 3147 does not apply here, the

18   enhanced penalty in 3147 does not apply here, and the

19   enhancement in 3C1.3 does not apply here.

20          Does that make sense?

21          MR. LYNCH:  Well, it does.  I have two things to say,

22   Judge.

23          THE COURT:  Go right ahead.

24          MR. LYNCH:  One, I approved this plea, so I didn't

25   think it applied at the time.

1          THE COURT:  Yep.

2          MR. LYNCH:  Okay?  So that's one thing.

3          Two, I would just ask in the future, Judge, since

4   this is now an issue, that at least if this issue comes before

5   you in a different case that you would at least listen to the

6   government's arguments, you know, that this isn't, like,

7   absolute, I already decided this in the Russell case,

8   Mr. Lynch, I don't want to hear any more on this other case.

9          THE COURT:  Have you I ever done that to you?

10          MR. LYNCH:  No, you wouldn't.  But I just with that,

11   with that understanding --

12          THE COURT:  No, and I'll tell you what, I mean, I've

13   thought this through.  I spent more time than I should have on

14   this over the last several days because it's a very

15   interesting issue, because I think that it's an important

16   issue, and because it's not very often that I look at eight

17   Circuit Court decisions and say that they're wrong.

18   Especially, you know, being a relatively new district judge

19   and still not having the self confidence to do that.

20          But I think that that's -- I think, especially based

21   on this latest observation that I -- that I had, I think it's

22   right.  And -- and -- and I don't think anyone has considered

23   that graduated sentencing scheme.

24          So I will always listen to you, Mr. Lynch.

25          MR. LYNCH:  Okay.  I just wanted to make sure.

1          THE COURT:  And I haven't, you know, I haven't

2     thought this through so much and researched it so much that

3     what I'm saying I'm positive is the final word on this.  I'm

4     just telling you that right now, that's what I think is

5     correct.

6          MR. LYNCH:  Perfect.

7          THE COURT:  And I think that it works for this case,

8     as well.

9          MR. LYNCH:  That's fine.  Thanks, Judge.

10         THE COURT:  Okay?

11         MR. LYNCH:  I appreciate it, Judge.

12         THE COURT:  Mr. Foti, I'm sure you're fine with

13    everything I just said.

14         MR. FOTI:  I am, yes.

15         THE COURT:  Okay.  Terrific.  So let's now proceed to

16    the sentencing.

17         Mr. Russell is before the Court for sentencing on his

18    previous pleas of guilty to Count 1 of the indictment in

19    17-CR-40, and that charged that he conspired to possess with

20    intent to distribute and to distribute 500 grams or more of

21    cocaine and 28 grams or more of cocaine base in violation of

22    21, United States Code, Section 846; and Count 1 of the

23    indictment in 18-CR-105, and that charged that he failed to

24    appear after his pretrial release in violation of Title 18,

25    United States Code, Section 3146.

1          We're going to begin with some questions that I have

2     for the lawyers and for you, Mr. Russell, about the

3     presentence investigation report.  I'm then going to make sure

4     that I've received and read all the sentencing-related

5     submissions.  After that, I'm going to hear from the

6     attorneys -- from your attorney regarding his other objections

7     that I have not resolved already.  And then I plan to make

8     some findings of fact, calculate the applicable guidelines

9     range, and then listen to counsel for both sides and you tell

10    me what you think is relevant to sentencing in this case.

11         So are there any questions before we begin from the

12    government?

13         MR. LYNCH:  No, Judge.

14         THE COURT:  From the defense?

15         MR. FOTI:  No, Judge.

16         THE COURT:  Okay.  Mr. Foti, have you had enough time

17    to read the presentence report prepared on October 11th, 2018,

18    revised on December 21st, 2018, and revised again on

19    January 7th, 2019 and to review it with your client?

20         MR. FOTI:  Yes.

21         THE COURT:  And, Ms. Harrington, do I have those

22    dates correct?

23         USPO HARRINGTON:  That's correct, Your Honor.

24         THE COURT:  And there's been no further -- there have

25    been no further revisions since January 7th, 2019; is that

1  right?

2          USPO HARRINGTON:  That is correct.

3          THE COURT:  Okay.  Mr. Foti, did you explain the

4  contents of the report to Mr. Russell?

5          MR. FOTI:  I did.

6          THE COURT:  Do you have any concerns about his

7  ability to understand it?

8          MR. FOTI:  No.

9          THE COURT:  Mr. Russell, did you receive a copy of

10 the report that was prepared on October 11th, revised on

11 December 21st, that's both in 2018, and then revised again on

12 January 7th, 2019?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Did your attorney explain it to you?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Do you understand it?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Do you need more time to talk to your

19 lawyer about it?

20         THE DEFENDANT:  No, Your Honor.

21         THE COURT:  Do you have any questions about it?

22         THE DEFENDANT:  No, sir.

23         THE COURT:  Okay.  Mr. Foti, other than the

24 objections that we'll get to in a minute, the unresolved

25 objections that we'll get to in a minute, does the defendant

USA v Lawrence Russell - Sentencing - 2/8/19

1    want to contest or change anything in the presentence report?

2             MR. FOTI:  Nothing further, Judge.

3             THE COURT:  Okay.  And that includes both the facts

4    in the report, as well as the guidelines calculation; is that

5    right?

6             MR. FOTI:  Yes.

7             THE COURT:  Mr. Russell, other than the objections

8    that Mr. Foti has raised, do you want to contest or change

9    anything in the report?

10            THE DEFENDANT:  No, Your Honor.

11            THE COURT:  Mr. Lynch, does the government want to

12   contest or change anything in the report?

13            MR. LYNCH:  No, Your Honor.

14            THE COURT:  And that includes both the facts and the

15   guidelines calculations; is that right?

16            MR. LYNCH:  Yes.  Well --

17            THE COURT:  Other than --

18            MR. LYNCH:  -- yeah, our Lawlor statement.

19            THE COURT:  Other than what we resolved already?

20            MR. LYNCH:  Yeah.

21            THE COURT:  Yes.

22            MR. LYNCH:  Okay.

23            THE COURT:  Yeah, I got it.  No, no.  I'm not trying

24   to trick you.  We've resolved that already.

25            MR. LYNCH:  All right.

1          THE COURT:  So --

2          MR. LYNCH:  I wanted to make sure.  Yes.  Then no,

3   Judge.

4          THE COURT:  No, I understand.  Thank you.

5          So, Mr. Foti, I've received and reviewed the

6   defendant's objections to the presentence report and

7   sentencing memorandum, the sentencing letter from the

8   defendant, and then two sets of documents that are labeled

9   notice of motion and letters in support with letters written

10  by: Linda Lewis Russell, his mother; two letters from Yvonne

11  Bailey Meadows, his sister; a letter from Sergeant Anthony B.

12  Russell, his oldest living brother; from Denise Sharelle Moss

13  Bailey, his oldest sister; from Tamalla Daniel, his fiancée;

14  from Rudy Thomas; and then two letters from his minor children

15  who, because they are minors, I'm not going to name on the

16  record.

17         And then there's also a certificate of completion of

18  the Willard Drug Treatment Campus Program from the New York

19  State Department of Corrections and Community Supervision.

20         Is that everything?

21         THE DEFENDANT:  No, Your Honor.

22         THE COURT:  It's not?  What --

23         MR. FOTI:  May I have a moment?

24         (Off the record at 2:12 p.m.)

25         (Back on the record at 2:15 p.m.)

1          MR. FOTI:  Judge, there were two things that

2    Mr. Russell brought to my attention.  One was in a package

3    that was delivered directly to the Court.  I have been

4    provided the original copies.  It deals with documentation

5    regarding sobriety that he was maintaining while he was on

6    pretrial release up to the point of the final violation.

7          And I asked him if he's comfortable with me

8    discussing that on the record when it comes time for us to

9    provide comments for the Court's consideration, and he said he

10   is.

11         The other -- the other item is a letter written by

12   Mr. Russell which was, I think, also sent to the Court.

13         THE COURT:  I referred to that.

14         THE DEFENDANT:  Oh.

15         MR. FOTI:  Oh.

16         THE COURT:  Yeah, I have the defendant's sentencing

17   letter, yeah.

18         MR. FOTI:  Those were the only two items.  So I think

19   at this point we're ready to proceed.

20         THE COURT:  Yep, I've read his letter.  Okay, good.

21   Great.  So there's nothing else then?

22         MR. FOTI:  No, Your Honor.

23         THE COURT:  Terrific.  Great.  Thank you.

24         And is there anything else you'd like to submit now

25   in writing?

1          MR. FOTI:  No.

2          THE COURT:  Okay.  Mr. Lynch, I've received the

3   government's statement with respect to sentencing factors and

4   the government's response to the defendant's objections and

5   sentencing memorandum --

6          MR. LYNCH:  Correct.

7          THE COURT:  -- is that everything?

8          MR. LYNCH:  That is, Judge.

9          THE COURT:  And is there anything else the government

10  would like to submit in writing?

11         MR. LYNCH:  No, Your Honor.

12         THE COURT:  Okay.  Let's talk about the objections.

13  We've already addressed one of the objections, but I'm going

14  to address the other two now.

15         First, the defendant objects to the application of --

16  I'm sorry, the defendant objects to the inclusion of

17  paragraphs 62 through 69 of the presentence report insofar as

18  they detail arrests for which the charges were dismissed,

19  sealed or unsupported by the record of disposition.

20         The government takes the position that those details

21  are properly included in the presentence report, and that the

22  Court can consider that information.

23         And Mr. Foti also objects to one of the paragraphs in

24  paragraph 62 through 69, that is specifically paragraph 68,

25  and that purports to detail a year 2000 arrest for assault and

1   harassment.  And the objection is that the defendant claims

2   that he was never charged with assault and, in fact, that he

3   does not recall either the incident or an individual alleged

4   to be -- to have been involved with the initials SM.

5          And the government's response states that there's

6   sufficient indicia of reliability to support the accuracy of

7   the information and, therefore, that the information should

8   remain in the report.

9          Do I have the objections and the government's

10  response correct?

11         MR. FOTI:  Yes.

12         MR. LYNCH:  Yes, Your Honor.

13         THE COURT:  So with respect to the inclusion of the

14  details relating to arrests for charges that were dismissed,

15  sealed or unsupported in paragraphs 62 through 69, those

16  objections are overruled.

17         Title 18, United States Code, Section 3661 provides

18  that there's no limit to the information concerning the

19  background, character and conduct of a defendant that I may

20  receive and consider for purposes of imposing sentence.

21         The presentence report notes which of those arrests

22  are sealed and which are dismissed, and those that there's no

23  record of any disposition.  And I can tell you that if a case

24  is dismissed and charges have not been proven against a

25  defendant, I -- I understand that, Mr. Foti, I practiced law

1    for a lot of years and I know that charges can be placed that

2    are not legitimate charges.  And when charges are placed and

3    dismissed or sealed or otherwise disposed of in a way that is

4    not to the defendant's disadvantage, I consider that, but I

5    can tell you I've never increased a defendant's sentence based

6    on charge -- unproven charges.

7            I take into account, you know, I take into account

8    things like how many times a person has been arrested.  I

9    think that's a legitimate thing for a judge to take a look at.

10           But when it's an unresolved charge or a dismissed

11   charge, it never tips the balance for me to impose a higher

12   sentence.

13           So I think they belong in the report.  I think that

14   probation was just doing its job and correctly includes them

15   in the report.  But -- and so I'm overruling your objection.

16   But you should not be concerned about whether those things are

17   going to tip the balance to a higher sentence.

18           With respect to paragraph 68, you state that

19   Mr. Russell has no recollection about that and no recollection

20   of those initials.

21           Again, the information in that paragraph is not going

22   to affect the sentence that I impose.  But I'm going to keep

23   it in the report, especially because the probation officer

24   included your objection in the addendum to the report.  So

25   both the charge, which again was an unresolved charge if I

1    recall correctly, and your explanation that the defendant

2    doesn't think it's him, are both in the report.

3           And I think Mr. Lynch is correct that there's

4    sufficient indicia of reliability to keep it in the report,

5    but the Bureau of Prisons will have your explanation of that.

6    So we're going to keep it in, but it's not going to affect the

7    sentence that I'm going to impose.

8           And I've already ruled and sustained the third

9    objection.

10          So have we covered all the objections now, Mr. Foti?

11          MR. FOTI:  Yes.

12          THE COURT:  Okay.  Anything further you would like to

13   say on any of them?

14          THE DEFENDANT:  No.  No, Your Honor.

15          MR. FOTI:  We're all set.

16          THE COURT:  Great.  Okay.  Mr. Lynch, anything

17   further you would like to say?

18          MR. LYNCH:  No, Judge.

19          THE COURT:  I previously accepted the defendant's

20   pleas of guilty to Count 1 of indictment 17-CR-40, conspiracy

21   to possesses with intent to distribute and conspiracy to

22   distribute 500 grams or more of cocaine and 28 grams or more

23   of cocaine base; and Count 1 of indictment 18-CR-105, that the

24   defendant failed to appear while he was on pretrial release.

25          At that time I deferred acceptance of the plea

1    agreement.  I now accept the terms and the conditions of the

2    plea agreement that was signed on July 26th, 2018, and the

3    judgement and sentence will be consistent with it.

4           I note that in the plea agreement, the government has

5    moved to dismiss or will move to dismiss the open counts of

6    the indictment against the defendant, so I also find that the

7    charges to which the defendant pled guilty, that is Count 1 of

8    17-cr-40 and Count 1 of 18-cr-105, adequately reflect the

9    seriousness of the actual offense behavior, and that accepting

10   the agreement is not going to undermine the statutory purposes

11   of sentencing or the guidelines.

12          Specifically, Counts 2 through 9 of indictment

13   17-cr-40 charge that possession with intent to distribute and

14   distribution of cocaine and cocaine base, based on certain

15   specified dates, all of which fall within the time frame of

16   the conspiracy to which the defendant pled guilty, and in

17   addition all of which are accounted for in the total weight of

18   the drugs in the sales, and that's included in the conspiracy

19   to which the defendant pleaded guilty, and with respect to

20   Count 10 of 17-cr-40, maintaining a drug-involved premises,

21   the base offense level has been increased two levels for that

22   conduct.  With respect to 18-cr-105, the defendant has pleaded

23   guilty to all relevant conduct.

24          So I think that the plea agreement and the pleas are,

25   in fact, consistent with both the guidelines and the statutory

1    purposes of sentencing in 3553.

2           The government has filed a statement with respect to

3    sentencing factors accepting the Probation and Pretrial

4    Service Office's presentence report.  The defendant has not

5    filed a statement with respect to sentencing factors and has

6    raised certain objections that have now been resolved.

7           But based on the parties' submissions and their

8    representations today in court, other than some of the factual

9    issues on which I've already ruled, the parties do not dispute

10   the facts included in the presentence investigation report.

11          I've reviewed that report, as well.  Based on my

12   review, based on the parties' written submissions, based on

13   the positions taken on the record today, and based on my

14   rulings on the defendant's objections, I adopt the facts in

15   the report as my findings of fact and I incorporate them into

16   the record.

17          I'm now going to place the January 7th, 2019

18   presentence investigation report in the record under seal.

19          If an appeal is filed, counsel on appeal will be

20   given access to the sealed report except that counsel on

21   appeal will not be given access to the recommendations

22   section.

23          So let's now turn to the guidelines which I must

24   calculate and consider as an important part of my

25   determination of a sentence.  And I apologize to everybody in

1    the courtroom for the technical nature of what's about to

2    follow, but the guidelines themselves and the reasons behind

3    the guidelines make this a necessary step in the process.

4           So based on the parties' submissions and their

5    representations today in court, there are also no disputes

6    regarding the recommendations in the report as to the

7    applicable sections of the Sentencing Commission's advisory

8    guidelines except for the three-level enhancement that I have

9    decided is not going to apply.  That's the only difference

10   that the parties have with respect to the calculations.

11          So let me recite what the calculations in the report

12   are and what my findings are.

13          Under Section 3D1.2, Count 1 of 17-cr-40 and Count 1

14   of 18-cr-105 are grouped for guideline calculation purposes

15   because the failure to appear count is treated as a specific

16   offense characteristic of the narcotics conspiracy count.

17          Application note 3 of Section 2J1.6 instructs that in

18   the case of a conviction on both the underlying offense and

19   failure to appear, other than in a case of failure to appear

20   for service of a sentence, the failure to appear is treated

21   under 3C1.1 as an obstruction of the underlying offense, and

22   the failure to appear count in the count for the underlying

23   offense are grouped together under 3D1.2(c).  So that's what

24   the presentence report says.

25          The presentence report then calculates under the 2018

1    versions of the guidelines manual that Sections 2D1.1(a)(5)

2    and 2D1.1(c)(8) provide for a base offense level of 24.

3            The report then recommends the offense level be

4    increased by two levels under Section 2D1.1(b)(1), because the

5    investigation revealed that on May 7th, 2014, the defendant

6    possessed a handgun.  24 plus 2 is 26.

7            The presentence investigation report then recommends

8    that the offense level be decreased by another two levels

9    under Section 2D1.1(b)(12), because the defendant maintained a

10   premise, that is 165 14th Street, Buffalo, New York, for the

11   purpose of manufacturing or distributing a controlled

12   substance.  26 plus 2 is 28.

13           The report then recommends that the offense level be

14   increased by another two levels under Section 2J1.6,

15   application note 3, and 3C1.1, because the defendant willfully

16   obstructed or impeded or attempted to obstruct or impede the

17   administration of justice.  28 plus 2 is 30.

18           The presentence report then recommends that the

19   offense level be increased by another three levels under

20   Title 18, United States Code, Section 3147 ans guidelines

21   3C1.3 because the defendant committed Count 1 of 18-cr-105

22   while on release.  The presentence investigation report

23   calculates that the offense level then becomes 33.  30 plus 3

24   is 33.

25           As I said at the beginning of this proceeding, I'm

USA v Lawrence Russell - Sentencing - 2/8/19

1    not going to apply that, so I'm not adding that three-level

2    increase in, but right now I'm reciting what the presentence

3    report says.

4            The presentence report then recommends that the

5    offense level be decreased by two levels under

6    Section 3E1.1(a) of the guidelines, because the defendant

7    accepted responsibility for his conduct.

8            And in its statement with respect to sentencing

9    factors, the government moved for an additional one-level

10   decrease of the offense level under Section 3E1.1(b), and I

11   grant that motion by the government.

12           So the presentence report calculates the defendant's

13   total offense level to be 30.  33 minus 3 is 30.

14           And the report calculates the defendant's criminal

15   history category to be IV based on the defendant's criminal

16   history score of 9.

17           Based on my factual findings, I agree with all the

18   report's calculations with respect to the criminal history

19   category, but I disagree with the calculation of the offense

20   level because I find that the three-level enhancement under

21   Section 3C1.3 does not apply.  So the Court's calculation is

22   that the total offense level is 27.

23           Presentence report calculates that with a total

24   offense level of 30 and a criminal history category of IV, the

25   applicable guidelines range would be a sentence of

1   imprisonment of 136 to 168 months, a fine range of $30,000 to

2   $5 million, and a period of supervised release of four to five

3   years with mandatory special assessments of $100 on each count

4   that I must impose for a total of $200.

5           But the Court finds that with a total offense level

6   of 27 and a criminal history Category IV, the applicable

7   guidelines range is a sentence of imprisonment of 100 to 125

8   months, a fine range -- and I think this is right although I

9   was going to ask my law clerk about this and didn't, so I'm

10  getting a little scary here trying to do this myself, but I

11  think it's $25,000 to $5 million?

12          THE CLERK:  No.

13          THE COURT:  No?

14          MR. LYNCH:  Yeah.  A 27 is $25,000.

15          THE CLERK:  Yes, but that's under the -- don't we use

16  the old guidelines?  What's the date of the crime?

17          MR. LYNCH:  The crime was 2014 through '15, and I

18  think --

19          THE CLERK:  Concluding?

20          MR. LYNCH:  Concluded in January 2015.

21          THE CLERK:  Right.  So we use the old time table,

22  which I have at my desk.

23          THE COURT:  Do you want to go get it?  Okay.  Go

24  ahead.  Yeah, I want to get it right.  I mean, I know it's not

25  a particularly big deal here, but I like to get these things

1  right.  And I know it's dangerous when I do these calculations

2  on my own.

3          MR. LYNCH:  Well, you know what?  I have it in my

4  calendar.  I put it down, like, because I can't remember when

5  the book changed on the fine, so I wrote it down.  It's either

6  1/11 -- 11/1/2015 or 11/1/2014, I can't remember.  But --

7          THE COURT:  They didn't tell me being a judge would

8  involve so much math.

9          THE CLERK:  Right.  We use the old fine table.

10          USPO HARRINGTON:  Correct.

11          THE CLERK:  So for an offense level of 27, the fine

12  range is 12,500 to whatever the --

13          THE COURT:  To 5 million.

14          THE CLERK:  -- to 5 million.

15          THE COURT:  Okay.  So with an offense level as the

16  Court finds of 27 and a criminal history score of Category IV,

17  the sentence of imprisonment under the guidelines would be

18  between 100 and 125 months, a fine between $12,500 and

19  $5 million, a period of supervised release of four to five

20  years, and the mandatory special assessments of $100 on each

21  count for a total of $200.

22          MR. LYNCH:  Judge, I hate to -- but then the

23  obstruction -- the failure to appear count, which actually

24  carries the same base offense level as the conduct that was

25  the, you know, the underlying criminal conduct, that occurred

1  in 2017.

2          THE CLERK:  Oh.

3          MR. LYNCH:  So that's why the new book applies.

4          THE COURT:  So I was right when I said --

5          MR. LYNCH:  You were.

6          THE CLERK:  Yeah.  Sorry, Judge.

7          THE COURT:  That's okay.

8          MR. LYNCH:  Just, of course, the minute you start

9  talking, it starts processing in my brain.  I'm sorry.

10          THE COURT:  So let's do it one more time.

11          With a final total offense level of 27, and a

12  criminal history Category IV, the guidelines are as follows:

13  a sentence of imprisonment of between 100 and 125 months, a

14  fine of between 25,000 and $5 million, and a period of

15  supervised release of four to five years, with a mandatory

16  special assessment of $100 on each count, for a total of $200

17  that I must impose.

18          And those are my calculations of the guidelines.  Any

19  objections to those calculations?

20          MR. LYNCH:  No, Judge.

21          MR. FOTI:  No, Judge.

22          THE COURT:  Okay.  Mr. Russell, under the Supreme

23  Court's decision in United States versus Booker and the

24  2nd Circuit's decision in United States versus Crosby, the

25  Court must consider the guidelines but it's not bound by them.

1        The Court also must consider the factors that are

2   included in 18, United States Code, Section 3553(a).  Those

3   factors include: the nature and circumstances of the offense;

4   your history and characteristics; the need for the sentence to

5   reflect the seriousness of the offense, to promote respect for

6   the law and to provide a fair punishment to you; the need to

7   deter others from committing crimes and to protect the public

8   from your crimes; the need to provide you with educational or

9   vocational training in an attempt to rehabilitate you; the

10  types of sentences that are available; any policy statements

11  issued by the Sentencing Commission; sentences given to others

12  who committed crimes similar to the one to which you pleaded

13  guilty; and the need for restitution to victims.

14        I'm going to take all those factors into account when

15  I pronounce sentence, but before I do, I want to give the

16  attorneys and you a chance to talk to me about anything you

17  think is relevant to sentencing.

18        So we're going to start with the government.

19  Mr. Lynch, does the government want to say anything?

20        MR. LYNCH:  Thank you, Judge.  As the Court's aware,

21  the parties pursuant to the plea agreement agreed to the

22  guidelines and they agreed that they would not argue outside

23  the guidelines for any departures.

24        In addition, the government agreed that it would not

25  oppose a sentence at the low end of the range which is 100

1    months.

2           The defendant is 41 years old.  He stands before you,

3    Judge, with a criminal history that spans 26 years.  It

4    started at the age of 15.  During that period of time, he has

5    already served two substantial prison terms.  He served a

6    period of about 18 months, and then he recently served -- was

7    sentence to a prison term of four years.  I realize he didn't

8    serve that entire time because he was at the Willard Drug

9    Treatment Program, but those are significant sentences that

10   were imposed, and those haven't changed the defendant's

11   behavior.

12          Unfortunately, I realize he's had some difficulties

13   in his life, and I'm sure that drugs and alcohol have been at

14   least a partial reason for his criminal conduct.

15          But if you look at the underlying conduct in this

16   case, Judge, it's not just one simple drug sale.  This is a

17   drug conspiracy that spanned two years.  A substantial amount

18   of cocaine and crack cocaine were sold by the defendant and

19   his coconspirator, John Nelson.  And during that time he

20   engaged, you know, he had a firearm, and he admitted to that.

21          So, not only do we have a significant amount of

22   drugs, but we also have introduced into this conspiracy the

23   possession of firearms which only creates a more substantial

24   danger to the public.

25          Finally, Judge, you know, we have a defendant who

1    fled while on release.  He was given certainly the benefit of

2    believing that he would show up in court, that he would make

3    appearances.

4         And I realize he may have at one point fled in an

5    instant, but there was a long time on release -- or, I'm

6    sorry, a long time on the run, and it was only through the

7    efforts of the United States Marshal Service as well as the

8    U.S. Attorney's Office seeking judicial orders where we were

9    actually able to locate him.  And then when they did, the

10   United States Marshal Service was able to take him into

11   custody.

12        And that has to, I think, Judge, be a significant

13   factor in determining what the sentence is in this case.

14        And when you look at his criminal history, Judge, his

15   involvement in this serious offense, his obstruction of

16   justice by fleeing, I do believe and the government believes

17   that a 100 month sentence would be appropriate in this case.

18        THE COURT:  Thank you.  There are no identifiable

19   victims -- well, there actually is a victim, the manufacturer

20   of the ankle bracelet.

21        MR. LYNCH:  Oh --

22        THE COURT:  I don't know if they're really a --

23        MR. LYNCH:  Yeah, I don't know.

24        THE COURT:  No victims here want to speak, right?

25        MR. LYNCH:  No.

1          THE COURT:  Go ahead, Mr. Foti.

2          MR. FOTI:  Thank you, Judge.  I would agree with the

3   government and in regards and as well as the evidence that is

4   before the Court on the issue of whether alcohol and substance

5   abuse has been a factor here for the Court's consideration.

6          I would go further and say it's really the primary

7   factor that has affected Mr. Russell and the decisions that he

8   has made.  And both the -- I guess what I'd like to convey in

9   my statements here is that Mr. Russell has consistently sort

10  of demonstrated two different characters and qualities that go

11  with those opposing adverse characters.  One is -- one is that

12  he is a good father, he is a good family member.  His sister

13  who is in the courtroom today speaks to that.  Good son,

14  reliable, caring, big heart.

15         All of those things seem to be reflected in

16  everything I've seen throughout this case.  You know, but for

17  the criminal conduct that he engaged in he has been a

18  significant person in the lives of his family members,

19  specifically his kids.

20         And although the mother of his children was affected

21  by the obstruction of justice charge and the conduct related

22  to it, she stood by him in respect to, she maintained

23  consistently, he has nonetheless been a very, very good

24  father.  And it is significant to her kids that he continue to

25  be able to be involved in their lives in some respect.

1          I think that -- the fact that she didn't take a

2   position that she wanted him locked up and away from her kids

3   after having been personally affected by one of the mistakes

4   that took place, I think that's speaks to the fact that there

5   are a lot of positive qualities that he has demonstrated those

6   closest to him are familiar with, and results in them

7   continuing to stand by him knowing that there is good

8   character in there, that there is significant amount of

9   potential in there.

10          And I'd like to say that in regards to the

11   obstruction, I know it is a consideration before the Court,

12   not just because he pled to it, but because it's significant

13   to the factors that the Court has to weigh.

14          But I would note that Mr. Russell did not demonstrate

15   he was going to flee at the first opportunity.  And I don't

16   just point that out because there was a period of time where

17   he maintained compliance with pretrial release, but I also

18   refer back to August of 2017 when a mistake was made and when

19   he was released from Willard after I think he successfully

20   completed the program, he had no court date.  He was actually

21   supposed to go into federal custody and he didn't, he didn't

22   lapse into federal custody.  He was released, which was an

23   error, apparently.  And he -- rather than realize that there

24   was a mistake and he was now released and attempt to flee at

25   that moment, he did something which I think is the right thing

1    to do but not necessarily what everybody else under his

2    circumstances would have done, and he contacted me and said I

3    need to get in front of the Court because I've been released

4    here and I know I still have the pending federal charge.

5            And I discussed it with him and explained there's a

6    good chance you could go back in because I think this appears

7    to be a mistake.  Absent a detention hearing, you very well

8    may.  And you may go back into custody in the interim, and you

9    may ultimately end up in custody following the detention

10   hearing.  And I, of course, I advised him that nonetheless

11   that's what we should do.

12           But knowing full well the circumstances, he, you

13   know, followed through.  Directed me to do exactly what we're

14   supposed to do, and get him into court, and he showed up to

15   court willingly.  And we had our detention hearing, and he was

16   given the opportunity to be released and continue his efforts

17   to maintain sobriety.

18           And I think that speaks to the good character, the

19   aspect of Lawrence Russell that wants to do the right thing.

20   I think that was an extraordinary effort on his part to

21   demonstrate to the Court that he wanted to do the right thing.

22   And it stands in sharp contrast to what happens several months

23   later when after several relapses -- or, I believe, two

24   relapses.  In the second relapse, the wheels come off.  He

25   makes a mistake that he sort of carries on over the course of

1   a number of months, and ultimately leads to his arrest on the

2   obstruction of justice charge.

3           He feels the effect of that.  It certainly weighs in

4   the fact that he had to plea to an additional charge and that

5   it affected his guidelines, and we're not allowed pursuant to

6   our plea agreement to advocate for a sentence outside of those

7   guidelines.

8           But I would note that what ultimately took place in

9   this case seems to be consistent what my point is, is that

10  Mr. Russell has a whole lot of potential.  And when he is

11  sober, after completing the Willard program, for example, and

12  doing good, he has every intention of doing the lawful thing

13  and the right thing.  And it's only when alcohol gets involved

14  again that he starts to go down a different road.

15          And he has not suggested that he's unaware of this.

16  He has not refused to comply with treatment.

17          The presentence investigation report and probation, I

18  think it's consistently demonstrated that he was in compliance

19  for the most part after his release.

20          He was diagnosed with severe alcohol abuse -- or,

21  severe alcohol disorder, and that was on August 29, 2017.  And

22  he, after as of September 3rd, 2017, maintained sobriety until

23  he relapsed in November.  And what Horizon had communicated,

24  and this was in the materials that Mr. Russell brought today

25  and I've had a chance to review, when he had his relapse in

1  November, he was upfront about it with his probation officer,

2  and the indication was he responded to his relapse in a

3  positive way, was able to continue to comply with treatment

4  recommendations, and got back on the right course until the

5  subsequent relapse.

6      Everything I've said is consistent with what his

7  family has told me.  They all, out of concern for him, know

8  that alcohol, in particular, has been a demon that has

9  followed him, and it has affected him in some of the decisions

10  that he's made along the way.

11      They all care for him.  The fact that they took time

12  to write letters demonstrate that.  The content of the letters

13  I think is consistent with what I'm seeing today.  They all

14  demonstrate, they see great potential in him, but are aware

15  that he's made bad decisions along the way particularly when

16  he loses control of his sobriety, which is an ongoing struggle

17  for him and will continue to be an ongoing struggle.

18      I noted following the objections in document 110, I

19  did refer to the factor of 18 U.S. Code Section 3553(a)(2)(D)

20  which talks about the need for education, vocational training,

21  medical care, treatment.  And I do think that we recognize a

22  sentence of imprisonment would -- would allow for continued

23  efforts towards that treatment, and hopefully upon release he

24  will have gotten control of that and will be able to put his

25  life in a different direction.

1          I'd ask the Court to consider that be the focus of a

2   rehabilitative effort here is his continued treatment related

3   to his alcoholism.  And I -- I can only ask for the sentence

4   of 100 months consistent with what the government has agreed

5   not to object to.  I believe that's a significant amount of

6   time.  And I hope the Court will consider all the factors, and

7   particularly Mr. Russell's continued efforts towards dealing

8   with his sobriety and the amount of time that it would take to

9   go to that effort in order to secure that Mr. Russell, the

10   character that has been positive and a good family member and

11   a good father, can really hopefully shine upon his release and

12   do some good when that time comes.

13          THE COURT:  Okay.  Before I hear from Mr. Russell, I

14   want to ask:  My clerk advised you that I'm considering

15   imposing a mental health condition in addition to the

16   conditions that are included in the presentence report.  Do

17   you have anything you want to say about that?  Any objection

18   you'd like to raise to that?

19          THE DEFENDANT:  No, sir.

20          MR. FOTI:  No, Judge.  And the materials have

21   demonstrated that Mr. Russell's experienced trauma in his

22   past, and I think actually --

23          THE COURT:  Well, his brother's letter is -- and I'll

24   get into this when I give the reasons for the sentence -- but

25   his brother's letter is the one.  I wasn't going to impose a

1  condition of mental health until I read the letter from his

2  brother, Sergeant --

3           THE DEFENDANT:  Anthony?

4           THE COURT:  Yeah.  That letter made basically a plea

5  for some mental health treatment.  And when I saw that, I

6  said, you know, here's somebody who knows him pretty well --

7           MR. FOTI:  Right.

8           THE COURT:  -- who says there's some PTSD and some

9  depression that needs to be addressed, so thank you for that.

10          Okay.  Mr. Russell, anything you would like to say?

11          THE DEFENDANT:  Yes, sir.  Actually, I have something

12 that I would like that read.

13          THE COURT:  You go right ahead.

14          THE DEFENDANT:  Okay.  My name is Lawrence Matthew

15 Russell, Jr., I'm 41 years old, I'm an alcoholic and a

16 substance abuser.  And as of July 26th, 2018, I'm a convicted

17 nonviolent federal drug offender.  But that's not all I am.

18          I'm also a son, the youngest boy of seven children; a

19 brother; an uncle; a great uncle; a father of three biological

20 children, two nonbiological, three grand kids; a provider; a

21 fiancé; a teacher; a mentor; a counselor; a coach; a neighbor;

22 a hard worker; and a friend.

23          I could go on, but I also want you to know what I'm

24 not:  I'm not a threat.  I'm not a menace, a burglar, a con

25 artist, a pedophile, a terrorist, a woman beater, a gang

1   banger, a rapist, or a killer.

2          I'm just a human being that has made a few bad

3   mistakes in my life.

4          I could stand here and say we have all made bad

5   mistakes, but I can't speak for everyone else, so I'm going to

6   leave it on the "I."  I have made some bad decisions in my

7   life.

8          I could also stand here and make excuses, justify or

9   point the finger at others.  However, I was taught as a child

10  when you point the finger, there's always three pointing back.

11         So I stand here today to accept responsibility for my

12  actions, and I have faith that I will be judged fairly and

13  that my punishment will not exceed the crime.  Whatever the

14  outcome, I will accept my sentence gracefully.

15         Thank you, Your Honor.

16         THE COURT:  Thank you.

17         Okay.  Does either counsel know of any reason why

18  sentence should not now be imposed?

19         MR. LYNCH:  No, Your Honor.

20         MR. FOTI:  No.

21         THE COURT:  Okay.  Pursuant to the Sentencing Reform

22  Act of 1984, the 2008 version of the guidelines, it's the

23  judgement of the Court that the defendant Lawrence Russell is

24  hereby sentenced to aggregate sentence of 108 months of

25  imprisonment broken down as follows:

1          84 months on Count 1 of 17-cr-40, and 24 months of

2    imprisonment on Count 1 of 18-cr-105, to run consecutive to

3    the term of imprisonment imposed on Count 1 of 17-cr-40 for an

4    aggregate sentence of 108 months of imprisonment.  The cost of

5    incarceration fee is waived.

6          I recommend very strongly that the defendant be

7    placed in the RDAP program which may result in his serving

8    less time than the sentence that I'm imposing.  I'm going to

9    get to the reasons in a second why I imposed a little bit

10   higher of a sentence than both sides asked me to impose, but

11   why I'm recommending a RDAP which I hope will result in your

12   serving even less time than even the lower sentence would be.

13         And I'm recommending that the defendant be placed in

14   a facility that has the RDAP program and that also has the

15   mental health wherewithal to provide the mental health

16   counseling that he needs.

17         And then after both of those considerations are taken

18   into account, that he be placed in a facility as close to

19   Western New York as possible so that he can have access to his

20   family members.

21         MR. FOTI:  Judge, just on the last point?

22         THE COURT:  Yeah, go ahead.

23         MR. FOTI:  My client did indicate to me in advance,

24   and I -- we would join in that recommendation, and we don't

25   have any opposition to that being the primary factor.

1          THE COURT:  The RDAP and the mental health?

2          MR. FOTI:  Yes.

3          THE COURT:  Yeah.

4          MR. FOTI:  That would be our request for first

5    consideration of his location of imprisonment.  But beyond

6    that, we would actually ask that if any geographical

7    considerations are taken, that it be in a facility in North

8    Carolina.  That is closest to a number of family members that

9    he has over there.

10          THE COURT:  Terrific.  Yeah.  And so I will recommend

11   that he be placed as close to his family in North Carolina as

12   possible.  I want to make it as easy as possible for your

13   family to visit you, and I think that that's going have a

14   positive influence on you, as well.  So that's the idea behind

15   that.  So if North Carolina is the best place, that's where

16   I'd like it to be.

17          THE DEFENDANT:  Thank you.

18          THE COURT:  Upon release, the defendant will be

19   placed on supervised release for a term of five years.  After

20   his release, the following conditions shall apply:

21          Within 72 hours of release from custody of the Bureau

22   of Prisons, the defendant shall report in person to the

23   probation office in the district where he's released unless

24   his probation officer instructs him differently.

25          The defendant shall comply with the standard

1    conditions of supervised release adopted by the Court.

2          The defendant shall not commit any crimes under

3    federal, state or local law.

4          The defendant shall not possess a firearm or any

5    other dangerous device.

6          The defendant shall not possess a controlled

7    substance except as prescribed by a physician.

8          The defendant shall cooperate in the collection of a

9    DNA sample as required by the Justice for All Act of 2004.

10         The defendant shall participate in a program for

11   substance abuse, including substance abuse testing such as

12   urinalysis and other testing, and shall undergo a drug/alcohol

13   evaluation and treatment if substance abuse is indicated by

14   the testing.  The probation officer will supervise the details

15   of any testing and treatment including the selection of a

16   treatment provider and schedule.

17         If inpatient treatment is recommended, however, it

18   must be approved by the Court unless the defendant consents.

19   The defendant is not to leave treatment until completion or as

20   ordered by the Court.  While in treatment and after discharge

21   from treatment, the defendant is to abstain from using

22   alcohol.  The defendant is required to contribute to the cost

23   of services rendered.

24         I'm imposing this condition because of the

25   defendant's use and abuse of alcohol, marijuana, and cocaine

1   as detailed in paragraphs 102 to 110 of the presentence

2   report, and I believe it therefore serves the statutory

3   sentencing purposes of rehabilitation, deterrence and public

4   protection.

5           The defendant is to participate in a mental health

6   treatment program including a mental health evaluation and any

7   treatment recommended.  The probation officer will supervise

8   the details of any testing and treatment including the

9   selection of a provider and schedule.  If inpatient treatment

10  is recommended, however, that must be approved by the Court

11  unless the defendant consents.

12          The defendant is not to leave treatment until

13  completion or as ordered by the Court.  While in treatment or

14  taking psychotropic medication, the defendant shall abstain

15  from using alcohol.  The defendant is required to contribute

16  to the cost of services rendered.

17          I'm imposing this condition because of the mental

18  health issues that are noted in paragraph 101 of the

19  presentence report.  And especially because of what his

20  brother said in his letter, his brother Anthony Russell.

21          And he refers to the defendant's devastating mental

22  illness and depression that has long incarcerated him from

23  early childhood.  He notes that even though the defendant has

24  received counselling, most notably alcohol and substance abuse

25  counselling, none of the counselling was provided by a

USA v Lawrence Russell - Sentencing - 2/8/19

41

1    licensed psychiatrist or someone who was sufficiently trained,

2    he believes, to treat the PTSD and depression that the

3    defendant suffers from.  And he says in kind of an impassioned

4    plea, Judge Vilardo, I believe that if he is not treated, he

5    will fall victim to an even more tragic end.

6         And that is -- I mean, that's obviously a brother who

7    loves his brother very much, who knows him better than I do,

8    and who thinks that he needs some mental health treatment.  So

9    I've imposed this condition largely based on what your brother

10   said.  And I believe that serves the statutory sentencing

11   purposes of rehabilitation and public protection.

12        The defendant shall submit to a search of his person,

13   property, vehicle, place of residence or any other property

14   under his control based on reasonable suspicion and shall

15   permit confiscation of any evidence or contraband discovered.

16        I'm imposing this condition because the offense --

17   one of the offenses to which the defendant pled guilty

18   involves drugs which are very easily concealed, and because I

19   think that the condition imposed serves the statutory

20   sentencing purposes of deterrence and public protection.

21        After considering the factors set forth in 18, United

22   States Code, Section 3664(a) and 3664(f)(2), the defendant

23   is -- I order the defendant to make restitution to BI, Inc.

24   which is the provider of the ankle monitor in the amount of

25   $575.  Interest is waived.  That restitution is due

1    immediately.

2         If the restitution is not paid when he's placed on

3    supervision, the defendant shall make monthly payments at the

4    rate of at least 10 percent of his monthly gross income.

5    Payments to be made to BI, Inc., attention accounts receivable

6    restitution, 6265 Gun Barrel Avenue, Suite B, Boulder,

7    Colorado 80301.  And the restitution shall be paid in full by

8    the end of the first year of supervised release.

9         The defendant shall pay to the United States a

10   mandatory special assessment of a total of $200, that is $100

11   on each count.  Payment shall be made to the clerk, United

12   States District Court, attention finance, United States

13   Courthouse, 2 Niagara Square, Buffalo, New York 14202.

14        If the special assessment is not paid when the

15   defendant is incarcerated, payment shall begin under the

16   Bureau of Prisons Inmate Financial Responsibility Program.

17        So in determining the sentence, I've given this a lot

18   of thought.  I've reviewed the circumstances of the case.  I

19   reviewed the plea.  I began with the guidelines as I must.

20   I've considered the fact that both sides asked for the same

21   sentence here, which I did not impose, which I imposed a

22   little bit higher than, and I'm going to give the reasons in a

23   second.  And the reasons largely relate to the sentencing

24   factors that I stated earlier from Section 3553(a).

25        I'm not imposing a fine.  I'm not imposing the costs

1   of imprisonment or the costs of supervised release.  I'm not

2   imposing any costs other than the special assessments and the

3   restitution, both because I don't believe you have the

4   financial ability to make those payments, also because of what

5   I would see to be a disproportionate impact to the people

6   outside who probably would help you make those payments, who

7   love you and who are suffering enough because you're not going

8   to be in their lives for a significant period of time.

9           So this is a serious crime.  I mean, there were very

10  large amounts of drugs involved, made all the more serious as

11  Mr. Lynch points out because of the possession of a weapon at

12  one of the drug transactions, a weapon that you were not

13  entitled to have because of your prior convictions.  And then

14  made even more serious than that by your flight.

15          And so I determined the sentence, I portioned the 108

16  months into 84 months and 24 months, because what I did was I

17  looked at the guidelines range without any flight, so just the

18  guidelines range without anything at all, and I saw that the

19  low end of that guidelines range was 84 months.

20          And then I asked myself, what additional penalties

21  should be imposed for the flight, during the course of the --

22  the charges.  And I said 24 months for that.

23          And so that's how I came up with 108 months, which is

24  toward the low end of the guidelines but not at the low end of

25  the guidelines.

1          I factored into my consideration the fact that you

2    have a long and involved criminal history dating back to when

3    you were 15 years old in 1992.  There's a robbery in which a

4    codefendant brandished a weapon.  There's the battery of a

5    female.  There's physically resisting arrest.  There's

6    possession of a loaded firearm.  And there's more.  There's

7    about half a dozen violations of parole or probation.

8          And -- and you have a criminal history category of IV

9    on a scale of I to VI, and that is not good.

10          So when I look at the nature and the seriousness of

11   the offense, the offenses, when I look at your history and

12   characteristics, the need to make you understand and to

13   promote respect for the law, the need to provide a fair

14   punishment, the need for deterrence, the need for consistency

15   in sentencing, I think that they all call for a significant

16   term of imprisonment and a guideline sentence and something

17   that's below the very -- I'm sorry, above the very low end of

18   the guidelines, slightly above, it's not a lot above, but

19   enough above that it makes a statement that I think that the

20   very low end of the guidelines is too lenient here.

21          I also take into account the fact that almost all

22   these crimes, as your lawyer points out, are related to

23   alcohol and marijuana.  Almost every single -- and the

24   violations of probation and parole are almost all related to

25   alcohol and marijuana.

USA v Lawrence Russell - Sentencing - 2/8/19

1          I read the letters from your family, and they say

2    essentially what your lawyer said about you, that you can be

3    two different people.  When you drink -- when you drink,

4    here's what happens.  In your words, in the presentence

5    report, I was saying to my staff, this is one of the most

6    remarkably insightful things that I've ever read a defendant

7    saying in a presentence report, and you actually said this to

8    the probation office back in 2015.  You said I'm not a bad

9    person, I'm just bad at making good decisions.

10          That is -- that's in it in a nutshell.  That's it in

11   a nutshell.

12          And the reason you're bad at making good decisions is

13   because of this demon alcohol that has gotten into your life,

14   and I think you need to get control over it.  And I hope that

15   this is a wake-up call to you so that you can get control over

16   it.

17          And that's why I've recommended the RDAP program,

18   because I'm hoping that that will, you know, get you started

19   on the road to sobriety.  I'm hoping that this -- this family

20   that loves you so much will be on your mind and keep you on

21   the road to sobriety.  Those kids that you love so much.

22          So, your family says you're a good family man and a

23   good father.  You can't be a good family man and sell drugs,

24   and you can't be a good family man and drink.

25          You can't let the alcohol and selling drugs be more

1    important to you than those kids, and the brothers and

2    sisters, and your mom, and everybody.  That's got to come

3    first.

4           So get some pictures of your kids and put them next

5    to your bed.  When you wake up every day, when you're in jail

6    and when you're out, tell yourself I'm not going to drink

7    because of them.  Because they're watching me.  Because

8    they're going to -- and they're going to follow me as a role

9    model.

10          And you can do it.  But you've got to get past this

11   damn alcohol addiction and the drug addiction that's turned

12   you from the straight and narrow to doing this stuff that has

13   you in front of me today.

14          When I -- I don't recommend the RDAP program lightly.

15   I almost never recommend it.  People ask me to recommend it

16   all the time, and I don't recommend it lightly.

17          The reason I'm recommending here is because I've seen

18   that you've tried to rehabilitate yourself.  You went in 2008,

19   in 2013 and '14, in 2016, in 2017, you tried.  And you made

20   some strides.  You know, one step forward, two steps back,

21   unfortunately, and you ended up relapsing.

22          I see someone who's trying that hard and I say he

23   deserves a chance.  That's why you got the RDAP recommendation

24   from me, because I think you deserve a chance to really beat

25   this thing.  But you've got to want to beat it.  You've got to

USA v Lawrence Russell - Sentencing - 2/8/19

1    want to beat it.  And I'm hoping the RDAP program will get you

2    started on that, and I'm hoping that once you get out the

3    conditions of supervised release that I have in place will

4    help you get out from under it as well.

5             So, we're all pulling for you and we all think you

6    can do you it.  I've -- I've -- I've tried to fashion a

7    sentence that I think will give you the tools to do it, but

8    you've got to do it yourself, and I hope you will.

9             I've imposed the high end of supervised release, five

10   years with special conditions, so that those conditions will

11   help you return to society after your incarceration.  But it's

12   also imposed so that the probation office can keep an eye on

13   you for those five years and make sure that you don't commit

14   further illegal conduct that has you -- the sort of conduct

15   that has you in front of me today.

16            So in sum, based on the guidelines, based on the

17   positions of the parties, based on my review of all the facts

18   and circumstances of this case, based on all the letters that

19   your family members wrote about you and everything that I've

20   learned about you over the past several days as I've read all

21   this, I think that the sentence I have imposed is sufficient

22   but not greater than necessary to comply with the purposes of

23   sentencing in 18, United States Code, Section 3553(a)(2).  And

24   although I'm not bound to do so, I have imposed a sentence

25   within the applicable guidelines range.

1          Pursuant to Rule 32(j)(1)(B) of the Federal Rules of

2    Criminal Procedure, I now advise you of your right to appeal.

3          You have a statutory right to appeal your sentence

4    under certain circumstances, particularly if you think the

5    sentence is contrary to law.  A defendant may waive those

6    rights as part of a plea agreement.

7          As I think you recognize, Mr. Russell, you entered

8    into a plea agreement in which you waived some of your rights

9    to appeal, specifically your right to appeal a sentence that

10   falls within or is less than the calculated guidelines range

11   of imprisonment.

12         Waivers like these are generally enforceable.  If you

13   think the waiver is unenforceable, you can present that theory

14   to the appellate court.

15         If you want to attempt to appeal some issue that you

16   think survives your waiver, you must file a notice of appeal

17   within 14 days.

18         If you're unable to pay for the cost of appeal, you

19   can apply for leave to appeal in forma pauperis, that is leave

20   to appeal without paying costs.

21         You have the right to be represented by counsel in

22   any appeal.  If you can't afford counsel, you have the right

23   to have counsel appointed to represent you free of charge.

24         Mr. Lynch, you have a motion?

25         MR. LYNCH:  Yes, Judge, I move to dismiss the open

1    counts against Mr. Russell in indictment 17-cr-0040 and

2    18-cr-105.

3              THE COURT:  Okay.  That motion is granted.

4              Anything further, Mr. Lynch?

5              MR. LYNCH:  No, Judge.

6              THE COURT:  Anything further from the defense?

7              THE DEFENDANT:  No, Your Honor.

8              MR. FOTI:  No, Judge.

9              THE COURT:  Okay.

10             USPO HARRINGTON:  Your Honor?  I'm sorry to

11   interrupt.  There's just a couple things I want to clarify.

12             THE COURT:  Go right ahead.

13             USPO HARRINGTON:  The $575 repayment to BI, I just

14   want to verify that that's being imposed as a special

15   condition of supervised release and is not restitution.

16             THE COURT:  Okay.  Yes.

17             USPO HARRINGTON:  Okay.  So it is -- I'm going to put

18   it in the J and C as part of a special condition.

19             THE COURT:  That's fine.

20             USPO HARRINGTON:  And secondly, I wanted to make sure

21   we address that there is a forfeiture --

22             THE COURT:  I was just going to say that.

23             USPO HARRINGTON:  Okay.  Sorry.

24             THE COURT:  The forfeiture will be made a part of the

25   judgement.

1              USPO HARRINGTON:  Okay.  Thank you, Your Honor.

2              THE COURT:  Okay.  Yep.  Thank you.

3              The statement of reasons shall be included in the

4  judgment and shall be provided to the probation office, to the

5  Sentencing Commission, and to the Bureau of Prisons.

6              A complete copy of the presentence report shall be

7  provided to the probation office, to the Sentencing

8  Commission, and to the Bureau of Prisons.

9              Any other copies of the report and related materials

10  shall remain confidential.

11             And as I said earlier, if an appeal is taken, counsel

12  will have access to the report except for the recommendations

13  section at the end of the report.

14             A judgement of the conviction should be prepared

15  promptly on the form prescribed for judgements, including

16  sentences under the Sentencing Reform Act.

17             And the defendant is remanded to the custody of the

18  United States Marshals.

19             Good luck to you, sir.  I hope that the programs that

20  they have inside will help you, and I hope that the programs

21  that you engage in outside once you're released continue that

22  rehabilitation and that you end up doing what I know you can

23  do, and that is being a very productive member of society and

24  a good father and a good brother and a good son.

25             THE DEFENDANT:  Thank you, Your Honor.

USA v Lawrence Russell - Sentencing - 2/8/19

51

1           THE COURT:  So I hope that works.  Thank you.

2       (Proceedings concluded at 3:07 p.m.)

3           *     *     *     *     *     *     *

1                      CERTIFICATION

2

3          I certify that the foregoing is a

4      correct transcription of the proceedings

5      recorded by me in this matter.

6

7

8

9                    s/ Ann M. Sawyer
                     Ann M. Sawyer, FCRR, RPR, CRR,
10                   NYRCR, NYACR, Notary Public
                     Official Reporter
11                   U.S.D.C., W.D.N.Y.

12

13

14

15

16

17

18

19

20

21

22

23

24

25